SUNSHINE, The (CROSBY v.). See Case No. 3,425.

---

## Case No. 13,624.

### The SUNSWICK.

[6 Ben. 112; [1] 15 Int. Rev. Rec. 154.]

District Court, E. D. New York. May, 1872.

SHIPPING — PUBLIC REGULATIONS—INSPECTION OF BOILER—INTER-STATE COMMERCE—FERRY-BOAT —BURDEN OF PROOF—JUDICIAL NOTICE.

1. A libel was filed against a ferry-boat engaged in carrying passengers and freight across the East river, from Astoria to New York City, to recover a penalty of $500 for a failure to have her boiler inspected, as required by the 11th section of the steamboat act of February 28th, 871 (16 Stat. 440). *Held*, that the court would take judicial notice that Astoria was on Long Island, whose inhabitants have commercial relations with other states of the Union, and that it is by means of the ferry-boats that such commerce is carried on.

[Cited in Re Long Island North Shore Passenger & Freight Transp. Co., 5 Fed. 604.]

2. Proof that the ferry-boat did carry the ordinary load of passengers and freight, and was held out as ready to transport on such a thoroughfare all passengers and freight that might offer, was sufficient to throw upon the claimants the burden of proving that such passengers and freight were not destined for other states.

3. In the absence of such proof, the ferry-boat must be held to be within the provisions of the steamboat act.

In admiralty.

J. J. Allen. Asst. Dist. Atty., for the United States.

Beebe, Donohue & Cooke, for claimants.

BENEDICT, District Judge. This is a proceeding in rem, in behalf of the United States, against the steamboat Sunswick, to enforce against that vessel a liability for $500, under the provisions of the act of congress entitled "An act to provide for the better security of life on board of vessels propelled in whole or in part by steam, and for other purposes," passed February 28th, 1871 (16 Stat. 440).

The charge is that the boat was engaged in navigating public navigable waters of the United States, to wit, the harbor and bay of

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

New York, without having her boiler inspected, as required by the 11th section of the statute above referred to.

The defence is that the boat is not shown to be subject to be inspected under the laws of the United States, but was engaged in the purely internal commerce of the state of New York. That the vessel had failed to comply with the section of the statute referred to is conceded, and it cannot be disputed that she is a vessel, within the description given by the act, of vessels to which the law is declared to be applicable.

By the express words of the 58th section of the act, its provisions are made applicable to every ferry-boat; and, by section 41, all steamers "navigating the lakes, bays, inlets, sounds, rivers, harbors or other navigable waters of the United States, where such waters are common highways of commerce, or open to general or competitive navigation," are made subject to the provisions of the act; and, in my opinion, she must, upon the evidence, be held subject to the act, although, notwithstanding its broad language, it be considered inoperative as against a vessel exclusively engaged in purely internal commerce.

The evidence shows that, at the time complained of, the Sunswick was a steam ferry-boat used as one of the ferry-boats employed to operate the Astoria ferry, and ran between Astoria, a place on Long Island, to the foot of 92d street, a place on New York Island, carrying passengers and freight. It also appears in evidence that the Astoria ferry is a public ferry, established by law, and a common thoroughfare open to all, and used for the transporting of all passengers and freight which cross the East river at that point. Judicial notice may be taken of the fact that Astoria is on an island, which contains a large population and has numerous and extensive manufactories and large cities within its bounds; that its inhabitants have commercial relations with various states of the Union, and use the ferry-boats as the ordinary means of communication between the island and the mainland; that, upon these boats, large quantities of merchandise and numerous passengers, destined to places in different states, are necessarily transported in the ordinary course of daily business, and that it is principally by means of these ferries that the commerce between Long Island and other states is carried on.

The East river is an arm of the sea, and navigable water of the United States; and, by the decision of the supreme court in the case of The Daniel Ball (10 Wall. [77 U. S.] 557), a vessel employed in transporting on such waters goods destined for other states is engaged in commerce among the states, and, however limited that commerce may be, she is, so far as it goes, subject to the legislation of congress, although her route may lie wholly within a single state, and she does not run in connection with or in continuation of any line of steamers or any line of railway.

The ferry-boats on the East river come within the scope of this decision, and, consequently, must be subject to the provisions of the act of February 28th, 1871.

The only doubt in this particular action arises from the absence of any evidence showing a transporting on this ferry-boat, at any particular time, of either merchandise, which had begun to move as an article of trade from one state to another, or of passengers having a similar destination. But my conclusion is that proof that the vessel was one of the ferry-boats, engaged on such a ferry as above described, and that while so engaged she did actually transport the ordinary load of passengers and freight which compose the cargoes of those ferry-boats, and was held out as ready to transport, on such a thoroughfare, all passengers and freight that might offer, is sufficient to shift the burden of proof, and in the absence of any evidence from the claimants of the vessel, will warrant the inference that the vessel was being used as an instrument of inter-state commerce, as defined by the supreme court in the case of The Daniel Ball. She was, therefore, subject to the laws of congress, and must be held liable for the omission of the proper inspection required by the 11th section of the act of February 28th, 1871.

NOTE [from 15 Int. Rev. Rec. 155]. U. S. v. The Sunswick. This is a like action for a penalty of $50 for failure to surrender her license, under the act of Feb. 18, 1793 [1 Stat. 305]. In this case the only point presented for my consideration has been disposed of, so far as this court is concerned, by my decision in the previous case against the same vessel, and a similar result must follow here. Let a decree be entered for the libelants.